# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE E. WEST, R.N., B.S.N., P.H.N., <br><br> Plaintiff, <br><br> vs. <br><br> LOUISE BAILEY, et al., <br><br> Defendants. | CASE NO. 11cv1760-MMA (POR) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> [Doc. No. 19] |

Plaintiff Catherine E. West, proceeding *pro se*, has filed a Second Amended Complaint ("SAC") [Doc. No. 11] against Defendants Louise Bailey, Executive Director of the California Board of Registered Nursing, and Pam Harris, Chief Deputy Director of the California Employment Development Department, challenging the constitutionality of the State of California's licensing requirements for practicing registered nurses. Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition to the motion with supporting documents, and Defendants replied. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

///
///
///
///

# **BACKGROUND**

Plaintiff practiced in California as a licensed, registered nurse from July 31, 1971 until August 1, 2009.[1] At that time, the California Board of Registered Nursing ("the Board") placed a hold on her license due to her refusal to submit to fingerprinting and a criminal background check. Plaintiff alleges that because she has been unable to renew her license, she is unable to earn a living as a registered nurse. On July 31, 2011, the Board lifted the hold and placed Plaintiff on a permanent "Inactive Status" due to her failure to renew her license.

According to Plaintiff, she has complied with the Board's licensing renewal requirements for the duration of her tenure as a registered nurse, including completing thirty continuing education credits and paying a licensing renewal fee every two years. However, Plaintiff refuses to comply with the additional requirements set forth in Title 16 of the California Code of Regulations, section 1419, which provides:

> For a license that expires on or after March 1, 2009, as a condition of renewal, an applicant for renewal not previously fingerprinted by the board, or for whom a record of the submission of fingerprints no longer exists, is required to furnish to the Department of Justice, as directed by the board, a full set of fingerprints for the purpose of conducting a criminal history record check and to undergo a state and federal level criminal offender record information search conducted through the Department of Justice. Failure to submit a full set of fingerprints to the Department of Justice on or before the date required for renewal of a license is grounds for discipline by the board.

Because Plaintiff continued to practice as a registered nurse after March 1, 2009, she was required to comply with the fingerprinting requirement, but she refused to do so.

Although her allegations are not entirely clear, Plaintiff appears to challenge the constitutionality of section 1419 on several grounds. Plaintiff asserts that section 1419's fingerprinting requirement violates her Fourth Amendment constitutional right to be free of unreasonable seizures. According to Plaintiff, her choice not to submit a set of fingerprints to the Department of Justice has resulted in the *de facto* seizure of her license to practice as a registered

---

[1] Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

nurse. Plaintiff also alleges that Defendants have "ignored" her protected liberty interest in pursuing her chosen profession, which the Court construes liberally as a Fourteenth Amendment substantive due process challenge. Plaintiff further contends that section 1419 operates as a punishment regardless of past criminality. The Court construes this allegation as a constitutional challenge to section 1419 under the Bill of Attainder Clause of the United States Constitution. Finally, Plaintiff alleges that Defendant Harris, Chief Deputy Director of California's Employment Development Department, acted in concert with Defendant Bailey to cause her harm, by refusing to accept her reasons for being unemployed as legitimate.[2]

Based on these allegations, Plaintiff seeks only prospective injunctive relief, requesting the Court enjoin the enforcement of the requirements set forth by section 1419, so that she may renew her license to practice as a registered nurse without having to submit to fingerprinting and a criminal background check.[3] Defendants move to dismiss Plaintiff's SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to state a plausible constitutional claim.

## **DISCUSSION**

*1.  Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). "The old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

---

[2] Presumably, Plaintiff's allegations against Defendant Harris are based on a determination by the Employment Development Department that Plaintiff is ineligible for unemployment benefits due to the manner in which she lost her job as a home healthcare nurse. However, Plaintiff's allegations against Defendant Harris are sparse, unclear, and fail under Federal Rule of Civil Procedure 8(a) to put Defendant Harris on proper notice of the nature of Plaintiff's claims against her. As such, Plaintiff's claims against Defendant Harris are subject to dismissal under Rule 8, as well as Rule 12(b)(6), as discussed *infra*.

[3] "[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S.__ , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004), citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

    *2.    Standards Applicable to Pro Se Litigants*

Where a plaintiff appears in propria persona, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

The Court must give a *pro se* litigant leave to amend her complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted), citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d

at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3. Plaintiff's Claims

Plaintiff asserts that by conditioning the renewal of her nursing license on fingerprinting and a criminal background check, Defendants have violated her constitutional rights. Defendants move to dismiss this action, arguing that the fingerprinting of healthcare professionals for purposes of conducting a criminal background check does not violate the Fourth Amendment. Defendants do not address Plaintiff's claim that her non-compliance with section 1419 has resulted in an unreasonable seizure of her license to practice as a registered nurse. Rather, Defendants assert that because nursing is a closely-regulated profession, and fingerprinting is minimally intrusive upon on an individual's right to privacy, compliance with section 1419 does not subject Plaintiff to an unreasonable search.

As noted above, the Court construes Plaintiff's allegations liberally as generally challenging the constitutionality of section 1419, and potentially asserting additional claims under the Due Process and Bill of Attainder Clauses. Defendants have not read Plaintiff's allegations so broadly, and therefore do not address the plausibility of these claims in their motion to dismiss. However, "[w]here multiple constitutional violations are alleged, each must be examined separately." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992). Therefore, the Court considers whether the fingerprinting requirement of section 1419 may violate any constitutional ground specifically raised, or potentially implicated, by Plaintiff's allegations.

#### a) Constitutional Rights

##### I) Fourth Amendment Rights

Plaintiff alleges that the enforcement of section 1419 has resulted in an unconstitutional seizure of her license to practice as a registered nurse. The Fourth Amendment, applicable to the states by virtue of the Fourteenth Amendment, forbids governmental violation of "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . ." U.S. Const., amend. IV. "It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations." *City of Ontario, Cal. v. Quon*, 130 S.Ct.

2619, 2627 (2010), citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 530 (1967).  The Supreme Court has held that this protection extends to searches and seizures not only by law enforcement authorities, but also by government officials who conduct various civil activities.  *See, e.g., O'Connor v. Ortega*, 480 U.S. 709 (1987) (state hospital officials); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) (school officials).  The withholding of Plaintiff's nursing license by the Board may plausibly be considered a seizure under the Fourth Amendment.  A seizure, however, does not offend the Fourth Amendment unless it is unreasonable.

      ii)  Fourteenth Amendment – Substantive Due Process

  Plaintiff also alleges that Defendants "ignored" her protected liberty interest by preventing her from making an "ongoing living as a professional, safe and competent" registered nurse.  These allegations arguably invoke Plaintiff's constitutional right to due process of law.  *SAC*, pg. 2 ¶ 1.  The Ninth Circuit has maintained that "it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations."  *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 n.4 (9th Cir. 1994).

      iii)  Fourteenth Amendment – Procedural Due Process

  "[A]n individual has a legitimate property interest in his or her professional license."  *Gallo v. United States Dist. Court*, 349 F.3d 1169, 1179 (9th Cir. 2003), citing *Brown v. Smith* (In re Poole), 222 F.3d 618, 620 (9th Cir. 2000); *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) (holding that physician has a constitutionally protected property interest in his or her medical license); *Zuckerman v. State Board of Chiropractic Examiners*, 29 Cal. 4th 32, 43 (2002) ("A chiropractor whose license is revoked is deprived of that property interest.").  The Ninth Circuit has made clear that "a professional license, once conferred, constitutes an entitlement subject to constitutional protection."  *Id.* at 1179; *see also Conway v. State Bar*, 47 Cal. 3d 1107, 1113 (1989) (holding that an individual with a valid professional license "has a property interest in the right to practice his profession that cannot be taken from him without due process.").

    b)  <u>Constitutional Standard – Rational Basis Review</u>

  The Court must begin its analysis by identifying the correct level of constitutional scrutiny.  There is a "long-standing rule" in the Ninth Circuit that "any 'conceivable basis' will justify the

constitutionality of a licensing scheme not affecting fundamental rights." *Gallo v. U.S. Dist. Court For Dist. of Arizona*, 349 F.3d 1169, 1179 (9th Cir. 2003). Here, Plaintiff's allegations directly implicate her right to work as a registered nurse. It is well-established that the right to pursue one's chosen profession is not a fundamental right. *Lupert v. California State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985). Thus, to state a plausible constitutional claim, Plaintiff must sufficiently allege that the fingerprinting requirement for licensed practicing nurses in California bears no relationship to any legitimate interest of the state, "such as public health, safety, or consumer protection." *Merrifield v. Lockyer*, 547 F.3d 978, 986 (9th Cir. 2008). Or, as phrased by another court, "[t]he question is: given the State's inherent leeway, has the State regulated in a rational manner?" *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1106 (S.D.Cal. 1999). Based on well-established case law in this Circuit and others, the answer to this question in this case appears to be "yes," and any claim to the contrary cannot survive Defendants' motion to dismiss.

### c) Constitutional Analysis

It is without serious dispute that the first aspect of the rational basis test is satisfied by the state's interests in public health and safety. *See, e.g., Watson v. Maryland*, 218 U.S. 173, 177 (1910) ("It is too well settled to require discussion at this day that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health."). As Defendants accurately assert, nursing is a closely regulated profession in the state of California. The applicable statutes set forth a variety of required qualifications and procedures, including a licensing provision. In California, "[n]o person shall engage in the practice of nursing, as defined in section 2725, without holding a license which is in an active status issued under this chapter except as otherwise provided in this act. Every licensee may be known as a registered nurse and may place the letters "R.N." after his name." Cal. Bus. & Prof. Code § 2732. Of particular pertinence here, "[a] licensee whose license is in an inactive status may not practice nursing." *Id.* § 2734.

The Board is charged with the public duty of oversight and regulation.[4] "Protection of the public shall be the highest priority for the Board of Registered Nursing in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." *Id*. § 2708.1. The Board is authorized by statute to enforce regulatory compliance and "may take disciplinary action against a certified or licensed nurse or deny an application for a certificate or license for . . . conviction of a felony or of any offense substantially related to the qualifications, functions, and duties of a registered nurse, in which event the record of the conviction shall be conclusive evidence thereof." *Id*. § 2761. In order to assist the Board in this endeavor, an applicant for a license or for renewal of a license, "is required to furnish to the Department of Justice, as directed by the Board, a full set of fingerprints for the purpose of conducting a criminal history record check and to undergo a state and federal level criminal offender record information search." 16 Cal. Code Reg. § 1419.

California's interest in regulating the healthcare profession and protecting the public from healthcare workers who have been convicted of felonies cannot seriously be questioned. The states' desire to afford such protections to the public is particularly understandable in cases such as this, where prior to having her license revoked, Plaintiff was working for Interim Healthcare, a company providing health care to individuals in their own homes.

Furthermore, courts throughout the country consistently uphold the constitutionality of statutes that withhold or revoke occupational licenses for failure to meet or comply with conditions imposed by the state for societal protection. *See, e.g., Dittman v. California*, 191 F.3d 1020, 1030-31 (9th Cir. 1999); *Abramson v. Gonzalez*, 949 F.2d 1567, 1580-81 (11th Cir. 1992) (upholding statute requiring professionals to have state license before holding themselves out as psychologists). Statutes that require or allow revocation of professional licenses after a licensee has been convicted of a crime routinely pass constitutional muster. *See, e.g., Hawker v. New York*, 170

---

[4] Where a plaintiff alleges a statute is unconstitutional, the persons with the statutory duty to enforce and administer the challenged statute are, in their official capacities, proper defendants because "[t]heir actions cause[ ] the constitutional violations complained of." *See Chaloux v. Killeen*, 886 F.2d 247, 251–52 (9th Cir.1989). Under California law, the persons statutorily charged with the duty to administer the relevant statutes, are the members of the Board of Registered Nursing.

U.S. 189 (1898) (upholding statute forbidding felons from practicing medicine after discussing general power of states to regulate professions, including requiring good character and determining what evidences a lack of good character); *Weiss v. N.M. Bd. of Dentistry*, 798 P.2d 175, 180 (N.M. 1990) (noting that permitting revocation of license on basis of criminal conviction "also reflects a legislative policy that public confidence in practitioners of a profession should not be undermined by the licensing of convicted felons" and that "it is within the legislative prerogative, in defining 'the qualifications one shall possess in order to engage in the practice of dentistry' [] to prescribe the conditions under which the privilege [] or the 'property right' [] of so practicing shall be enjoyed") (internal citations omitted); *Warmouth v. Del. State Bd. of Examiners in Optometry*, 514 A.2d 1119 (Del. Super. 1985) (affirming statute under which "conviction of a crime may be the sole basis for revocation of a license").

As the foregoing cases demonstrate, professional licenses have always been subject to regulation, and the Ninth Circuit has upheld the dismissal, at the pleading stage, of constitutional challenges to California's regulation of healthcare professionals. *National Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1051-1052 (9th Cir. 2000) (affirming dismissal of challenge to state's licensing of psychologists and psychoanalysts because "[b]ased on the health and welfare of its citizens, California certainly has a 'conceivable rational basis' for regulating the licensing of psychologists, and therefore, psychoanalysts."). Plaintiff's claims that requiring registered nurses to provide fingerprints prior to renewing their license violates the Fourth and/or Fourteenth Amendments are not plausible, and are subject to dismissal under Rule 12(b)(6).

    d)  <u>Bill of Attainder Clause</u>

Plaintiff alludes several times in her SAC to the "presumption of innocence" and asserts that by forcing compliance with the fingerprinting requirement and criminal background check, Defendants are punishing her as if she were a criminal and attempting to bar her from practicing as a registered nurse. *See, e.g., SAC*, pg. 4 ¶ 3. Construing these allegations broadly, as the Court is bound to do, Plaintiff appears to assert that section 1419 is an unconstitutional bill of attainder.

"Article I, section 9, clause 3 of the Constitution provides that "no Bill of Attainder or ex

1 post facto Law shall be passed." The Constitution extends the prohibition of bills of attainder to the
2 states. U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any Bill of Attainder . . . ."). Although
3 the prohibition against bills of attainder was one of the original guarantees of civil liberty, and has
4 existed for over two hundred years, the Supreme Court has relied on it only five times to strike down
5 legislation." *BellSouth Corp. v. FCC*, 162 F.3d 678, 683 (D.C. Cir. 1998) (collecting cases).
6 "Legislative bars to participation by individuals or groups in specific employments or professions"
7 are among the punishments forbidden by the Bill of Attainder Clause. *Selective Service System v.*
8 *Minnesota Public Interest Research Group*, 468 U.S. 841, 852 (1984). In order for a statute to
9 constitute a bill of attainder, three elements must be established: non-judicial punishment, lack of a
10 judicial trial, and specificity in identification of the individuals affected. *Id*. at 847.

11 Here, section 1419 does not act as an impermissible bar to employment because all
12 applicants for license renewal have an opportunity to be fingerprinted and pass a criminal
13 background check. A statute that allows individuals to "'carry the keys of their prison in their own
14 pockets'. . . does not fall within the historical meaning of forbidden legislative punishment."
15 *Selective Serv. Sys*., 468 U.S. at 853, quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1966).
16 Furthermore, as discussed in detail above, section 1419 serves the important legislative purpose of
17 protecting the public, which is a legitimate non-punitive objective. Nor does section 1419
18 specifically identify the individuals affected. Laws of general applicability that "set forth general
19 qualifications applicable to all persons who" want to receive a certain government-conferred benefit
20 (such as a license to practice as a registered nurse) and do not "single out a specific person or group
21 for deprivation" cannot be bills of attainder. *United States v. Brown*, 381 U.S. 437, n. 21 (1965).

22 Section 1419 does not specify Plaintiff by name, but rather is a law of general applicability:
23 it sets forth a general qualification (furnishing a full set of fingerprints) that is applicable to all
24 individuals who want to renew their license to practice as a registered nurse. Second, it does not
25 punish irreversible past behavior, but rather makes an individual's eligibility to renew his or her
26 license contingent upon the contemporaneous fact of submitting a set of fingerprints. This is a
27 condition that Plaintiff can correct at any time simply by providing a set of fingerprints. Section
28 1419 does not amount to a punishment of Plaintiff, and thus, does not violate the constitutional

1 | prohibition against bills of attainder.

      e)      <u>Leave to Amend</u>

When the Court has before it a *pro se* litigant, it may not dismiss an action unless it is clear amendment could not cure the deficiencies of the complaint. *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980). Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Here, the Court is not optimistic that Plaintiff will be able to reformulate her allegations to state a plausible claim for relief. However, because she is proceeding *pro se*, and because she has not yet had the benefit of a full analysis of her claims, the Court shall allow her one more opportunity to amend her complaint.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Second Amended Complaint. The Court **GRANTS** Plaintiff leave to file a Third Amended Complaint within thirty (30) days of the date this Order is filed.

**IT IS SO ORDERED**.

DATED: March 23, 2012

                                                  Hon. Michael M. Anello
                                                  United States District Judge